IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALID JAMMAL, *et al.*, | ) | CASE NO. 1:13 CV 437 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| AMERICAN FAMILY INSURANCE, *et al.*, | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| Defendants. | ) | |

This case is currently before the Court on Defendants' Motion to Dismiss Amended Complaint. (ECF #31). Plaintiffs have filed a Memorandum in Opposition to the Defendants' Motion to Dismiss (ECF #35). This was followed by Defendants' Reply, and Plaintiffs' Sur-Reply. (ECF # 36, 41). After considering all of the arguments presented by the parties, the allegations set for in the Amended Complaint, and the applicable law, the Court hereby DENIES Defendants' Motion to Dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Two of the currently named Plaintiffs filed a Class Action Complaint in February of 2013 raising several claims under the Employee Retirement Income Security Act ("ERISA"), and an unjust enrichment claim against four Defendants. (ECF #1). The Complaint was amended in April of 2013 adding the other four named Plaintiffs and several more defendants. (ECF #21). In addition, the First Amended Complaint ("Complaint") dropped the unjust enrichment claim. The Complaint alleges that the Plaintiffs were all "employees" as defined by ERISA, and as employees, were denied the benefits they were entitled to under Defendants' ("American Family") ERISA governed insurance and retirement plans. (ECF # 21). Defendants contend the allegations set forth in the Complaint, even if accepted as true, would fail to establish that Plaintiffs were "employees" subject to ERISA's protections. Further, even if ERISA did apply, Defendants contend, among other things, that the vast majority of claims are barred by the applicable statutes of limitation. (ECF #31).

According to the Complaint, the Plaintiffs in this case were all insurance agents hired by American Family to sell the company's insurance products (including home, auto, life, umbrella, business, health, and farm and ranch insurance policies) and retirement products.[2] (ECF #21, ¶

---

[1] The facts presented are those that have been alleged in the First Amended Complaint. In any instance where these allegations have been disputed by the Defendants, deference to the allegations will be accorded as required by the appropriate standard of review on a motion to dismiss.

[2] All facts set forth in this Memorandum Opinion are taken from the allegations in the First Amended Complaint. The Court makes no determination as to the truthfulness of these allegations, but accepts them as true solely for the purpose of addressing the Defendants' motion to dismiss. Further, the Court has set forth all relevant allegations but omitted all allegations that do not assert actual facts, but rather make legal conclusions or

3, 46). Until recently, American Family sold its products exclusively through agents and not directly to consumers. (ECF #21, ¶ 46). Each agent, upon hire, is required to sign the American Family Agent Agreement as a mandatory condition of employment. (ECF #21, ¶ 47). The agreement makes clear that the company intends the agents to be "independent contractors" and not "employees."[3] (ECF #21, ¶ 4, 8, 49). It further makes clear that the agents are responsible for their own self-employment taxes and are not eligible for various employee benefits. (ECF #21, ¶ 49). In addition to the terms of the agreement, American Family has other written and unwritten policies and procedures that the agents are required to follow as a condition of their employment. (ECF #21, ¶ 52). For example, agents and their employees are required to adhere to a code of conduct and business ethics standards developed and drafted by American Family. (ECF #21, ¶ 54, 57(C)). The agents are hired for an unlimited period of time, in an "at-will" relationship wherein both American Family and the agents have the ability to terminate the relationship at any time, for any or no reason. (ECF #21, ¶ 7, 59). Further, all agents must sign a non-complete that prevents them from soliciting their own American Family customers if either party has terminated the agency agreement. (ECF #21, ¶ 57(L)).

Agents hired by American Family are required to sell exclusively American Family

---

unwarranted inferences, or that merely assign labels or recite elements of a claim.

[3] Section 6 of the Agreement states that "[i]t is the intent of the parties hereto that you are not an employee of the Company for any purpose, but are an independent contractor for all purposes, including federal taxation with full control of your activities and the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of this agreement. As an independent contractor you are responsible for your self-employment taxes and are not eligible for various employee benefits such as Workers and Unemployment." (ECF #21, Ex. A at 4).

products. (ECF #21, ¶ 6, 46, 57(A)).    In addition, the company maintains ownership of the agents' books of business if/after they leave American Family (ECF #21, ¶ 57(B)); controls the agents' office hours and locations (ECF #21, ¶ 57 (F), (G)); sets mandatory district meetings (ECF #21, ¶ 57(T); sets mandatory hiring standards for and maintains power to veto the  hiring of any of the agents' staff (ECF #21, ¶ 57 (D)); has the right to unilaterally fire any of the agents' staff with or without cause (ECF #21, ¶ 57 (C), (E)); has the right to unilaterally modify or terminate any compensation or bonus schedule without prior notice (ECF #21, Ex. A, pg. 4, 6(d)); has the right to reassign any policy assigned to the agent, at any time (ECF #21, Ex. A, pg. 4, 6(e)); exercises significant control over the conduct, education, licensing, and discipline of agents and staff in the agents' office 9 ECF #21, ¶ 57 (C)(D)(S)); provides all of the computer hardware and software used by the agent and the agents' staff (ECF #21, ¶ 57 (I)); monitors the agent and the agents' staff's computer usage, including information stored, deletions, website usage, and email correspondence, and exercises authority to block websites at their own discretion and discipline or fire agents and staff for any personal use of the work computers (ECF #21, ¶ 57 (J), (O)(P)); imposes a document retention policy on the agents (ECF #21, ¶ 57(N); has absolute control over all information related to policyholders including information viewed, copied or imported to another system (ECF #21, ¶ 6, 57 (J)); monitors the daily work of agents, sets production requirements and monitors compliance with those requirements, regulates their in-office behavior to at least some degree (ECF #21, ¶ 57(K), (M), (P), (Q)); and, controls signage, and advertising for the agents' office. (ECF #21, ¶ 6, 57 ®).

    American Family offers the agents "Termination Benefits" which provide agents with death and pension benefits using a formula based on years of service and the number of in-force

policies sold by the agent over time.  (ECF #21, ¶ 8, 9, 60).  The Termination Benefits also provide lifetime annuities to agents who retire from the company at or over the age of sixty. (ECF #21, ¶ 8).  American Family does not recognize the Termination Benefits as and ERISA benefit plan, and allegedly often terminates agents before these offered benefits actually vest. (ECF #21, ¶ 10, 11).  Accepting these allegations as true, the Court addresses the Defendants' Motion to Dismiss below.

## **STANDARD OF REVIEW**

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)).  Further, the court must accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint are also properly considered.  *See Shaughness v. Interpublic Grp. Of Cos.,* 2012 U.S. App. LEXIS 24198 at *19 (6th Cir. Nov. 2, 2012).

Though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993).  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

*Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. The alleged facts must "state a claim that is plausible on its face." *Id.* at 570. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, in deciding a Rule 12(b)(6) motion, a court must be sure to determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## **ANALYSIS**

A. "Employee" status under ERISA

In order to be entitled to ERISA benefits, plaintiffs must show that they are "employees," and that they were eligible under the terms of the plan(s) to receive benefits. *Jaeger v. Matrix Essentials, Inc*., 236 F.Supp. 2d 815, 821-22 (N.D. Ohio 2003). Therefore, the threshold question in this case is whether the Plaintiffs have alleged enough facts to support a conclusion that they could have been "employees" rather than "independent contractors." If the facts alleged can only support a finding that the Plaintiffs were "independent contractors" then all claims must fail. If they have alleged sufficient facts to support their allegation that they were "employees" then Defendants' other arguments must be addressed.

The question of whether a plaintiff qualifies as an employee is a mixed question of law and fact, that can normally be decided by the court as a matter of law. *Weary v. Cochran,* 377

F.3d 522, 524 (6th Cir. 2004); *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992).  In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 320-321 (1992), the United States Supreme Court adopted a common law test for determining whether an individual is an employee for purposes of ERISA.  The designation is dependent on "the hiring party's right to control the manner and means by which the product is accomplished." *Id*. at 323.  The *Darden* court set forth several factors that are relevant to this determination.  These factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24.  These factors, however, are not necessarily exclusive, nor are any of the considerations dispositive.  "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id*. at 324.

Defendants seeks dismissal on the pleadings, arguing that "[s]ince Darden, numerous courts have considered whether insurance agents such as plaintiffs are "employees" for purposes of ERISA coverage.  They then cite a Ninth Circuit case, which was not an ERISA case, and which was not dismissed on the pleadings but only after discovery at the summary judgment stage. Further, the Ninth Circuit case, cited for providing a summary of the post-*Darden* law references only one Sixth Circuit case, which also was not dismissed on the pleadings, and did not involve ERISA.   In fact, not one of the cases cited by Defendants, whether within or without the Sixth Circuit involved a request for dismissal on the pleadings.  All but one involved summary judgment motions, and the other was a reversal of a lower court decision finding that

the agent was, in fact, an employee. In addition, only two are ERISA cases,[4] and both of those pre-date the *Darden* case decided by the United States Supreme Court.

Further, while similar in many respects, the working relationship between the parties, as alleged in this case, differ from those discussed in the other cited cases in some potentially significant ways. For example, in *Weary*, the court found that the agents were not employees, based at least in part on the fact that those agents could sell insurance for other companies and were not working exclusively for the defendant in that case. In addition, the *Weary* court noted that the agents had control over the hiring and firing of their own employees, and that the agents set their own production levels and working hours.

The Plaintiffs in this case have alleged that the Defendants exercised more control over the manner and means of his work and work environment through the following practices not present (or at least not mentioned) in the *Weary* case (the most recent of the cited cases): (1) Defendants require agents and their staff to use the computer hardware and software provided by the company; (2) Defendants control where the agents' offices could be located; (3) Defendants control the agent's office hours; (4) agents are required to follow written and unwritten policies and procedures established by Defendants or face discipline and/or termination; (5) agents are required to sell American Family products exclusively; (6) the Defendants maintain and exercise

---

[4] While similar tests have been used to determine whether or not there is an employee/employer relationship triggering other federal rights or benefits, the court in *Ware* indicated that each right or benefit sought may alter the weight of various factors such that under the exact same facts and circumstances it might be possible to find an employer/employee relationship for the purposes of a tax deduction, but not for ERISA benefits, for example. Therefore, while the non-ERISA cases may have some value in assessing the question, none are absolutely dispositive in determining what combination of factors are necessary to create an employee/employer relationship for ERISA purposes.

ownership over the agents' book of business and may reassign any of the agents' policies to other agents at any time; (7) Defendants set mandatory hiring criteria for the agents' staff; (8) Defendants have the power to veto any hiring decision made by the agent with regard to the agents' staff; (9) Defendants have the right to unilaterally fire any of the agents' staff with or without cause; (10) Defendants maintain the right to unilaterally modify or terminate any compensation or bonus schedule without prior notice; (11) Defendants exercise significant control over the conduct, education, licensing, and discipline of agents and their staff; (12) Defendants monitor the agents and staff's computer usage, including information stored, deletions, website usage, and email correspondence; and, they exercise their authority to block websites and discipline and/or fire agents and agents' staff for any personal use of the computer equipment; and, (13) Defendants monitor the daily work of the agents, set production requirements and monitor the agents' compliance with production and conduct requirements.

Similarly, this case presents significantly more allegations of company control over the agents' working methods and conditions than was found to be present in the *Averill* case. In *Averill* the agents were offered a choice at the time of hire between being an employee or an independent contractor, and the litigating agent in that case specifically chose independent contractor status. *Averill v. Gleaner Life Insurance Society*, 2008 U.S. Dist. LEXIS 10073 (N.D. Ohio 2008). In this case, agents were given no choice in the matter: if they wanted to sell for American Insurance they were required to sign an Agreement that labeled them as independent contractors. In *Averill*, the agent managed its own office, hired its own employees, and set its own hours. As set forth above, Plaintiffs in this case allege that each of these traditionally independent aspects of running an agency is controlled in large part by the Defendants rather

than the agents.  In *Averill*, agents could sell products from other companies as long as the product did not compete with Gleaner.  Plaintiffs in this case allege they were required to sell only American Family products, and could not sell any other products even if they were products not offered by American Family.

Similar differences arise when this case is compared with the *Ware* and the *Palazzo* cases.  For example, in *Ware*, agents were allowed to sell non-competing policies from other carriers.  In this case, Plaintiffs allege they are not allowed to sell products from any other company even if the products do not compete with any available American Family policy.  In *Palazzo*, the agent funded his own retirement plan and provided benefits to his own employees, there is no indication that this was true in the present case.  Further, there is no mention in these cases of the existence of several of the control factors set forth in the discussion distinguishing *Weary* above.  In short, there is no cited case that has the same combination of factors in play as have been alleged in this case.  Therefore, although Plaintiffs have not been able to cite any cases in which a commissioned insurance agent has been determined to be an employee for ERISA purposes, Defendants have not presented any law to suggest that such a relationship cannot exist as a matter of law, or that the combination of factors alleged in this case do not create such a relationship.

The *Darden* factors must be weighed, in combination with all of the other nuances of the relationship between the parties in order to determine whether an employee/employer relationship exist.  In reviewing the facts developed in the prior applicable cases it appears that the insurance companies have been continuously tightening their control over their agents while continuing to disavow them as employees.   If this trend continues, there will come a point when

simply labeling the agents as "independent contractors" and refusing to provide the benefits employees are entitled to will no longer outweigh the degree of control exercised by the insurance companies.  Whether this is the case that tips the scales on that front is impossible to determine at this stage of the proceedings.  However, Plaintiffs have alleged sufficient facts to create a plausible claim for relief, and that is sufficient, at this stage, to overcome Defendants' request for judgment on the pleadings.

    B.  Statutes of Limitations

        1.  Counts Four and Six, ERISA Fiduciary Duty Claims and Equitable Claims

ERISA provides a three year, and a six year statute of limitations for claims based on an alleged breach of fiduciary duty.  29 U.S.C. §1113.  The three year period applies when the plaintiff had "actual knowledge of the breach or violation."  *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564, 570-71 (6th Cir. 2010).   "An ERISA plaintiff has actual knowledge when he or she has 'knowledge of all the relevant facts, not that the facts establish a cognizable legal claim under ERISA." *Id.*    In all other cases, plaintiffs must file within six years . Whether Plaintiffs had actual knowledge of all the facts relevant to their claim for breach of fiduciary duty (Count Four) is a question of fact that cannot be decided at this stage of the litigation.  However, even assuming the six year statute of limitations applies, Plaintiffs have presented no argument that would indicate any Plaintiff other than Ms. Durachinsky timely filed suit.    They do, however, argue that equitable tolling principles should apply to extend the period of limitations.   As the appropriateness of equitable tolling is a fact based determination that is better suited for evaluation at the summary judgment stage, the Court will not make a final determination on the statute of limitations arguments relative to Count Four.

With regard to Count Six, Defendants contend that this claim is just another iteration of the breach of fiduciary duty claim alleged in Count Four. Plaintiffs argue that Count Six raises equitable claims under Section 1132(a)(3), which are subject to a fifteen year statute of limitations. Even assuming, without deciding, that Count Six does present a separate, non-duplicative claim, the applicable statute of limitations is not fifteen years. A claim for "reformation, restitution, and unjust enrichment" would be subject to the state's statute of limitations for an unjust enrichment claim, which in Ohio is six years. See, McGuire v. Metro Live Ins. Co., 899 F.Supp. 2d 645, 663 (E.D. Mich. 2012); Patel v. Krisjal, LLC, 2013-Ohio-1202 at ¶ 29 (10th App. Dist. 2013). As with claim Four, although the six year statute of limitations has expired, the Court cannot determine at this stage whether Plaintiffs argument for equitable tolling might be supported by the facts in this case. Therefore, the Court will not dismiss Count Six on statute of limitations grounds, but may re-visit the issue, if appropriate, at the summary judgment stage if the developed facts do not ultimately support the application of equitable tolling in this case.

### 2. Counts Three and Five, ERISA Section 502(a).

Congress did not impose a specific statute of limitations on claims brought to recover benefits under Section 502. *Winnett v. Caterpillar, Inc*., 609 F.3d 404, 408 (6th Cir. 2010). Therefore, the statute of limitations for an ERISA claim is generally "governed by the most analogous state statute of limitations. Ohio law provides that the statute of limitations could be as short as six years or as long as fifteen years." *Schumacher v. AK Steel Corp*., 711 F.3d 675 (6th Cir. 2013). Plaintiffs argue that Counts Three and Five arise from an alleged breach of the written Agent Agreements, therefore Ohio's fifteen year breach of contract statute of limitations

-12-

applies. However, a fair reading of the Complaint shows that there is no breach of contract claim at issue in this case. Counts Three and Five contain no allegation of any breach of a specific provision of the Agency Agreements. Nor do Plaintiffs contend that the written promised relating to the retirement benefits as described in the Agent Agreements were breached. Rather, they contend that the limitations imposed in the Agent Agreements were unlawful under ERISA. Further, Plaintiffs argument that Defendants' liability arises from a breach of their agreement to treat Plaintiffs as independent contractors is belied by the Plaintiffs chosen claims and request for relief. Plaintiffs do no assert a breach of contract claim based on their failure to reap the benefits of being an independent contractor, nor do they seek any relief for damages caused by their being treated as an employee. Rather they seek damages that would only be available, under the ERISA statute, if they were, in fact, employees and not independent contractors.

Plaintiffs claims under Counts Three and Five arise from an allegation that Defendants' employee benefits plans do not comply with 26 U.S.C. § 410(b) and § 105(h). (ECF #21 at ¶¶ 136-138) and/or that Defendants refused to implement benefit and accrual provisions of an ERISA plan in accordance with ERISA requirements. (ECF #21 at ¶ 118). Consistent with the Sixth Circuit's decision in *Redmon v. Sud-Chemie Ins. Retirement Plan for Union Employees*, 547 F.3d 531, 534-35 (6th Cir. 2008), alleged violations of specific ERISA requirements – as opposed to allegations of a breach of written contract terms – are governed by the six year statute of limitations period for statutory penalties. *See, Gelesky v. AK Steel Corp.*, 828 F.Supp. 2d 935, 939-43 (S.D. Ohio 2011); Ohio Rev. Code 2305.07. Therefore, the six year limitations period applies in this case.

There is no dispute that Plaintiff Durachinsky's claims under Count Three and Count

Five are timely. However, the parties disagree as to when the limitations period began to run, and, therefore, whether the remaining Plaintiffs are barred by the applicable six year limitations period.  An ERISA denial of benefits claim accrues "when a fiduciary gives a claimant a clear and unequivocal repudiation of benefits." *Redmon* at 538; *see also Morrison v. Marsh & McLennan Companies, Inc*., 439 F.3d 295, 302 (6th Cir. 2006).  Under federal law, a claim accrues when a claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.  *Winnett*, 609 F.3d at 408.   Defendants argue that the claims accrued when the Agent Agreement was signed; Plaintiffs contend the accrual of claims could not have occurred until Plaintiffs knew that they were being treated as employees rather than independent contractors.  Further, Plaintiffs contend that equitable tolling should be applied to extend the period of limitations because Defendants misrepresented Plaintiffs' employment status.  It is unclear based on the facts and allegations set forth in the Complaint and attached documents in this case when the running of the limitations period began or whether equitable tolling might be appropriate under the circumstances of this case.  Because these determinations may be dependent on the facts and circumstances determined to be true in this case, the question of claim accrual may be better after fact discovery is complete.  The question could be re-visited, if appropriate, at the summary judgment stage.

**Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss (ECF #31) is hereby DENIED. IT IS SO ORDERED.

                                            */s/Donald C. Nugent*
                                            DONALD C. NUGENT
                                            United States District Judge

DATED: August 9, 2013