IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


WALID JAMMAL, *et al.*,                )      CASE NO.  1:13 CV 437
                                       )
          Plaintiffs,                  )
                                       )
v.                                     )      JUDGE DONALD C. NUGENT
                                       )
AMERICAN FAMILY INSURANCE              )
GROUP, *et al.*,                       )      <u>MEMORANDUM OPINION</u>
                                       )      <u>AND ORDER</u>
          Defendants.                  )
                                       )


        This case is before the Court on four separate Motions for Summary Judgment, filed by

the Defendants.  (ECF #70, 75, 77, 79).  One motion has been filed with regard to each of the

four named Plaintiffs in the Second Amended Complaint.  The Plaintiffs filed a joint opposition

to each of Defendants' motions.  (ECF # 100); and the Defendants filed replies addressing each

individual motion for summary judgment.  (ECF #106, 107, 108, 109).   The case is now ripe for

review.

**Procedural and Factual Background**[1]

Plaintiffs, Walid Jammal, and Dana LaRiche  filed this proposed class action on February 28, 2013, against American Family Insurance Company (Group), American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin.  On April 5, 2013, the Complaint was amended, adding American Family Termination Benefits Plan, Retirement Plan for Employees of American Family Insurance Group, American Family 401K Plan, Group Life Plan, Group Health Plan, Group Dental Plan, Long Term Disability Plan, American Family Insurance Group Master Retirement Trust, 401K Plan Administrative Committee, and The Committee of Employee and District Manager Retirement Plan as Defendants.[2]  (ECF #21).  The Amended Complaint also added named Plaintiffs Patricia McClain-Evans, Kathleen Tuersley, Cinda J. Durachinsky, and John Vincent.  (ECF #21).

Defendants challenged the First Amended Complaint through a Motion to Dismiss, which was denied by the Court on August 9, 2013.  On September 27, 2013, the Court issued an opinion postponing class discovery until discovery relating the named Plaintiffs was complete and dispositive motions relating to those Plaintiffs had been addressed.

On June 30, 2014, the Complaint was amended a second time.  The Second Amended

---

[1]The factual summary is based upon the parties' statements of facts.  Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to the non-moving party.  Such statements are taken as true for purposes of this Summary Judgement Motion only, and should not be considered established for purposes of any future trial.

[2]
The term "Defendants" will be used to refer to all Defendants, as well as, at times, to only the Defendant employers.

Complaint added named Plaintiff, Nathan Garrett, and eliminated Dana LaRiche, Patricia McClain-Evans and John Vincent as named Plaintiffs.  (ECF #67).  Count One of the Complaint seeks declaratory judgment affirming that Plaintiffs and purported class members are "employees" for all purposes, including but not limited to ERISA; declaring that the Termination Benefits Plan is an employee benefit plan subject to ERISA's vesting and benefit accrual provisions; declaring that certain plan provisions violate ERISA; and, declaring that the Plaintiffs are entitled to reformation of the contracts and restitution of benefits allegedly withheld by American Family in violation of ERISA.  Count Two seeks injunctive relief prohibiting Defendants from continuing to mis-classify its agents as independent contractors; prohibiting Defendants from implementing benefits plans that do not comply with ERISA; ordering American Family to comply with ERISA requirements with regard to the Termination Benefit Plan; and, ordering Defendants to recalculate and pay benefits under the proper calculation of benefits as provided by ERISA.

Count Three is a Claim of benefits under ERISA § 502(a)(1)(B), seeking payments under the Termination Benefit Plan in accordance with ERISA requirements.  Count Four seeks restitution, contract reformation, and actual damages arising from Defendants' alleged breach of fiduciary duty arising from their refusal to recognize that the benefits provided under the Termination Benefits Plan were vested and non-forfeitable pursuant to ERISA's requirements, and for failing to follow ERISA accrual and vesting requirements.   Counts Five and Six seek damages and injunctive relief based on Plaintiffs failure to provide Plaintiffs with health and welfare benefits offered to other employees, including a retirement plan, 401K plan, group health plan, group dental plan, group life plan, and long term disability plan, that are offered to those

-3-

workers American Family has classified as employees.

Defendants have filed Motions for Summary Judgment challenging the claims of the four named Plaintiffs.  Defendants claim that Plaintiffs Nathan Garrett, Kathleen Tuersley, and Walid Jammal, are all barred from asserting any of their claims under the applicable statutes of limitations/repose.   With regard to Ms. Durachinsky, Defendants do not assert a statute of limitations defense in connection with her claims under Counts Three and Five (request for benefits).        Defendants also contend that none of these Plaintiffs can be classified as employees, and they are, therefore, not entitled to any ERISA benefits.  Further, Defendants claim that all four of these Plaintiffs are barred from raising the claims in Counts One, Two, Five and Six because they failed to exhaust their administrative remedies.  In addition, Defendants allege that Plaintiff Walid Jammal is barred by *res judicata* from raising any of the state claims because he previously filed suit against American Family and the case was dismissed with prejudice following a settlement between the parties.

The Plaintiffs dispute which period of limitations is applicable to the challenged claims and argue that equitable tolling would allow the Court to hear all of the stated claims.  They also contend that there is sufficient evidence upon which this Court could find that Plaintiffs are employees, not independent contractors, therefore making them eligible for ERISA benefits.  Further they argue that any attempt to exhaust administrative remedies would have been futile. Finally, Mr. Jammal argues that *res judicata* does not operate under the circumstances of this case to bar his current claims.

The relevant facts and arguments applicable to the statute of limitations defense vary somewhat for each individual Plaintiff, so each will be addressed separately in connection with

-4-

the Defendants' individual arguments for dismissal on this basis.  Any  common facts supporting

the remaining claims will be addressed in the appropriate section below.

## **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material"

only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards.  The court will view the summary

judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57

-5-

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence

presented is "merely colorable" and not "significantly probative," the court may decide the legal

issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could

find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.*

at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't

of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial--whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson*, 477 U.S. at 250.

**Statute of Limitations/Repose**

Defendants challenge Plaintiffs' ability to bring their claims based on the applicable statutes of limitation.   The Court found at the time it addressed Defendants' Motion to Dismiss the First Amended Complaint that the parties did not present sufficient information to allow the Court to determine when the statute of limitations was triggered from most of the alleged claims. At that time the issue was dependent on facts and circumstances not before the court and was not ripe for consideration.[3] The parties have since been allowed the benefit of significant discovery, and have presented two sets of briefing to the Court on this issue.  However, as set forth below, they have still failed to present much of the necessary information required for a final determination of this issue.

A.  Counts One, Two, Three, Five and Six

As set forth in the Court's Memorandum and Opinion denying Defendants' Motion to Dismiss the First Amended Complaint, all of the claims raised in the Plaintiffs' Complaint are subject, at most, to a six year statute of limitations, with the exception of Count Four, which will

---

[3]

Although the Court stated in its Order denying Defendants' Motion to Dismiss, that Plaintiff Duranchinsky was the only named plaintiff to file within the applicable statute of limitations on Count Four, that was based on the Defendants' position (and Plaintiffs failure to present a valid alternative argument) that the signing of the agent agreement was the trigger point for the running of the statute of limitations.  That opinion was limited by the arguments presented to the Court at that time, and was relevant only to the resolution of the Motion to Dismiss the First Amended Complaint.  Having now reviewed the specific factual claims in the Second Amended Complaint, and having taken into account the factual information now before the Court through the parties' briefing on the statute of limitations and summary judgment, the Court finds that there are additional considerations relevant to the statute of limitations issues that may bring other Plaintiffs' claims within the appropriate applicable periods of limitation with regard to Count Four.

be addressed separately below.  Determining the applicability of a six year statute of limitations, however, actually does little to answer the ultimate question: Are these Plaintiffs are barred from pursuing their claims?

What was missing at the motion to dismiss stage was the information relevant to determining when the statute of limitations began to run for each of the individual claims. Defendants assert that the limitations period should have begun on the date each agent signed their agency agreement.  Plaintiffs have argued instead that the triggering event is when it became clear that they would be permanently treated as employees rather than independent contractors.   There are other arguments raised in the summary judgment and statute of limitations briefings that contend the training period for the agents should not be considered as part of the period of limitations because the parties agreed and expected that Defendants would exert significant control over the agents during this training period.  Further, Plaintiffs now argue that the statute of limitations should be indefinitely tolled because the Defendants represented, and continue to represent, to the IRS that its sales agents are independent contractors and not employees, thereby intentionally obscuring their true status.

Both parties have focused exclusively on the question of when the Plaintiffs should have been aware of the facts that allegedly made them employees.  They have both argued that the that the limitations period should be based on this finding, though Plaintiffs argue it is also subject to tolling.  However, looking at the Complaint, it appears that not all of the alleged claims would necessarily have accrued at the time Plaintiffs were first treated as employees.

There is no cause of action for being treated as an employee, while being classified as a independent contractor.  Rather, the claims in the Complaint are all based on a denial of ERISA

benefits, or a failure to properly administer an ERISA plan.  An ERISA denial of benefits claim

accrues "when a fiduciary gives a claimant a clear and unequivocal repudiation of benefits."

*Redmon v. Sud-Chemie Ins. Retirement Plan for Union Employees*, 547 F.3d 531, 538 (6th Cir.

2008).  The Defendants argument would require the Court to find that this repudiation comes

when the parties sign the agent agreement setting forth the benefits available to the agents as

independent contractors.  Plaintiffs' argument, on the other hand, would require a finding that no

repudiation can occur until after Plaintiffs knew they were being treated as employees and were,

therefore, entitled to benefits.   The Court instead finds that no clear and unequivocal repudiation

of benefits can occur until after the Plaintiffs were entitled to the payment of benefits and failed

to receive them.  This is in keeping with the decision of the Sixth Circuit Court of Appeals in

*Redmon* wherein the Court of Appeals found that although there arguably may have been a

repudiation of survivor benefits when a waiver of benefits was executed and alternate retirement

payments were made to and accepted by the employee, repudiation was not clear and

unequivocal until after the employer failed to pay out the ERISA survivor benefits at the time

they would have otherwise come due. *Redmon at 539.*

Consequently the ERISA payment of benefit claims would accrue only when Defendants

failed to pay benefits after they allegedly came due; the administrative claims would arise when

those requirements were disregarded.[4]  Those dates vary depending on the specific benefit

---

<sup>4</sup>

When looking at the three year limitations period for breach of fiduciary duty triggered by
"actual knowledge", a plaintiff has actual knowledge of a claim when he or she has
"knowledge of all the facts, not that the facts establish a cognizable legal claim under
ERISA." *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564, 570-571
(6th Cir. 2010).  Defendants argument that the statute of limitations on all counts was
triggered by the signing of the agent agreement indicating Defendants intention of treating
them as independent contractors and defining the benefits plans would make some sense

sought, and may depend on a variety of factors, including but not limited to: whether benefits were required to be provided during an employees training period; when retirement benefits should have vested if Plaintiffs were in fact employees; and, whether and when Plaintiffs should have known that Defendants' alleged control would not cease after training ended.  Neither party has provided sufficient information upon which this Court could determine when the payment of each type of ERISA benefits should allegedly have occurred, and thereby determine the date of the denial of benefits or administrative failure that triggers the running of the statute of limitations for each separate claim.

For example, Plaintiffs assert a claim for benefits under the Defendants' 401K program. This claim would accrue once an employee became eligible for but did not receive benefits.  In order to determine when that occurred, the Court would need to know when employees became eligible for participation in such a plan.  Did an employees right to participate in the 401K program begin upon the signing of an employment agreement; upon completion of a training period; or after a set vesting period?  Many of the same questions arise in connection with the provision of other health and welfare benefits sought by the Plaintiffs.  In addition, although a claim for termination benefits could not have accrued prior to an agent's termination, which dates have been provided, the equitable claims for failing to properly fund and vest the termination program under ERISA may have accrued at some earlier date.  The parties, however, have not provided any information on the vesting or administrative requirement provisions under

---

under this definition.  However, this "actual knowledge" standard technically applies only to the three year limitations period under Count Four which contains an "actual knowledge" requirement and was not intended to define the moment of accrual of all ERISA claims.

-10-

the Defendants' other termination benefits plans.   The Complaint claims that the ERISA vesting

date can be anywhere between three and five years after hire;[5] however, there is no actual

evidence that would allow the Court to determine an exact date that would trigger the running of

the limitations period on this issue.

Once the claim accrual date is determined, Plaintiffs argue that equitable tolling should

apply to extend the period of limitations on all claims.  Equitable tolling is not available for

Count Four as discussed separately below.  With regard to the remaining claims, equitable

tolling may be available for ERISA denial of benefits claims under rare circumstances.  *See, Rios*

*v. Kelly*, 2014 U.S. Dist. LEXIS 44422 *6-7 (N.D. Ohio Feb. 13, 2004)(citing *Graham-*

*Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 560-61 (6th Cir. 2000).

Under the circumstances of this case, Plaintiffs could not have had any knowledge that they had

a cause of action available to them prior to being treated as employees and not independent

contractors.  They could not have filed an action in anticipation of a breach of the agency

agreement which promised to treat them as independent contractors.  This would mean that the

signing of the agency agreement should not be the trigger for the statute of limitations in this

case.

Plaintiffs were not entitled to benefits unless and until they were treated as employees,

and, therefore, the action did not accrue until sometime after they were allegedly treated as

employees and were denied benefits. Each Plaintiff was aware of how the Defendants were

treating them.  Therefore, they would have had knowledge of the facts necessary to spur them

---

[5]

This assertion still leaves open the question of the hire date for purposes of vesting: is it
the date of hire into the training program, the date of graduation from training when the
Plaintiffs became full agents, or some other date established by contract or by law?

toward action in pursuit of their rights under ERISA by the time an action accrued in this case and there would be no need for equitable tolling beyond the date of accrual.

Absent sufficient information to determine the exact triggering date for the running of the applicable statutes of limitations, summary judgment cannot be granted on these grounds.  All that can be certainly stated based on the information provided by the parties at this time is that all applicable statute of limitations on all counts (except Count Four addressed below) would have run within six years after the termination date of each individual agent.  By termination, each employee would unquestionably have been aware of the conditions and controls that were in place during their working relationship with Defendants, and all claims for benefits would have accrued.

Kathleen Tuersley separated from the Defendants sometime in 2009;  Plaintiff Walid Jammal was terminated December 8, 2011;  Nate Garrett submitted his allegedly forced resignation on August 18, 2011; and, Cinda Durachinsky was terminated in June of 2013, two months after she joined this lawsuit.  This lawsuit was originally filed on February 28, 2013.  Therefore, as all named Plaintiffs separated from Defendants within six years of  filing suit (after February 28, 2007) they will all survive summary judgment on the statute of limitations in connection with Counts One, Two, Three, Five and Six.  This holding should not be construed as a finding that all claims were brought within the applicable statute of limitations on every claim, but only that there has been insufficient evidence presented to support a finding in favor of Defendants on these grounds, at this time.

B.  Count Four

Count Four raises a direct claim for breach of fiduciary duty based on a failure to provide

-12-

termination benefits in accordance with ERISA requirements.  No ERISA action may be
commenced for breach of a fiduciary's responsibility, duty, or obligation after the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the
> breach or violation, or (B) in the case of an omission the latest date on which the
> fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge
> of the breach or violation; except that in the case of fraud or concealment, such
> action may be commenced not later than six years after the date of discovery of
> such breach or violation.

29 U.S.C. § 1113.  An ERISA plaintiff has "actual knowledge" when he or she has "knowledge
of all the relevant facts, not that the facts establish a cognizable legal claim under ERISA."
*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 570 (6th Cir. 2010).

Such two part tests have been held to establish an absolute cut-off for the assertion of
claims, which is not subject to equitable tolling.[6]  The United States Supreme Court has held
that, under federal law, when a statute specifically provides one time period which does not
begin to run until after the discovery of an injury, and a second time period that is not reliant on
when an injury is discovered, the legislative intent must be to set an absolute cut-off without

---

[6]

  Defendants label the six year outside cut-off as a statute of repose.  However, this is not
necessarily the correct terminology.  Although the two-part limitation in the case cited by
Defendants, *Lopardo v. Lehman Bros., Inc*., 548 F. Supp. 2d 450, 459-64 (N.D. Ohio
2008), did include both a "statute of limitations" and a "statute of repose," the two
limitations periods in the statute at issue here both qualify as statutes of limitation.  The
*Lopardo* opinion, while acknowledging an inconsistency in the use of these two labels,
came to the conclusion that a statute of repose, under federal law, was traditionally a time
limitation based on an event other than the creation of the harm.  For example, when a
cause of action is banned within a period of time after the sale of a product, regardless of
when a defect was imparted or a harm may have occurred, this limitation would be a
"statue of repose."  In this case, the limitation at issue is based on the date of the actual
breach or other mis-deed, and not on, for example, the first date of employment or some
other event that is not necessarily related to the date an injury is caused or incurred.

-13-

regard to issues of discovery or equitable tolling. *Lampf v. Gilbertson*, 501 U.S. 350, 363 (1991). The only way to give effect to both sections of the statute is to read the longer (three year) period as an absolute outside limit on bringing a claim. *Id.* at 363. Thus, absent a showing of fraud or concealment, Count Four must have been brought within six years after the last action constituting a breach or violation, or within three years of each Plaintiff's discovery of Defendants' alleged breach or violation.

Neither the Second Amended Complaint, nor any of the briefing provided by Plaintiffs have sufficiently alleged fraud or concealment of the alleged violation. Plaintiffs attempt to show fraud and concealment by alleging that Defendants knowingly and improperly argued to the IRS that Plaintiffs were independent contractors. This, however, is insufficient to establish fraud or concealment as against the Plaintiffs. There is no allegation that Defendants somehow concealed their treatment of the Plaintiffs from the Plaintiffs themselves. No could such an argument survive any logical review. However Defendants may have categorized the employment relationship, Plaintiffs were aware of the actual level of control being exerted over them. This knowledge, paired with their knowledge that they did not receive termination benefits under ERISA is all that is required to begin the running of the limitations period. Therefore, the statute of limitations applicable to Count Four is three years from the time each agent was terminated.

Kathleen Tuersley separated from the Defendants sometime in 2009; Plaintiff Walid Jammal was terminated December 8, 2011; Nate Garrett submitted his allegedly forced resignation on August 18, 2011; and, Cinda Durachinsky was terminated in June of 2013, two months after she joined this lawsuit. This lawsuit was originally filed on February 28, 2013, less

than three years after the termination dates of Walid Jammal, Nate Garrett, and Cinda Durachinsky.  Their claims under Count Four are, therefore, considered timely.   Kathleen Tuersley, however, having terminated her relationship with Defendants prior to February 28, 2010, is barred from pursuing her claim for breach of fiduciary duty under Count Four.


### *Res Judicata*

Defendants argue that Walid Jammal's claims should be dismissed on the basis *of res judicata*/claim preclusion.  Mr. Jammal and others previously filed a lawsuit against six American Family entities in the summer of 2010.  (Jammal Depo., Ex. 400, pp. 8-9).  This lawsuit did not raise any ERISA claims, including those set forth in the instant Complaint. Rather,  it raised a breach of contract claim based on several alleged violations of the Agent Agreement.  (Jammal Depo. Ex. 400; April 18, 2011 Jammal Depo. at 16-23).  These alleged breaches included unilateral changes in rate pricing, assignment of territories, underwriting standards and other practices that the Plaintiffs alleged were meant to drive them out of business and resulted in forced terminations of their agency agreements.  That lawsuit was dismissed with prejudice on December 3, 2013, upon settlement of the parties.

According to Mr. Jammal's brief in this case, the settlement agreement in the prior case specifically included a statement saying: "The parties agree that the release of claims in Paragraph 2 above does not include a release of the claims asserted in Jammal et al. v. American Family Insurance Company, et al., United States District Court for the Northern District of Ohio, Eastern Division, Case no. 1:13-cv-437."  No copy of the settlement agreement was provided to the Court and the citation given for this statement in Plaintiffs' brief does not provide a link to

any evidence verifying the language of the settlement agreement.  That said, Defendants do not challenge that this language was a part of the prior settlement agreement.

In order for claim preclusion to bar Mr. Jammal's claims, Defendants must show that the prior suit was resolved by a final, valid decision on the merits by a court of competent jurisdiction.  There is no dispute that the prior case at issue here was dismissed with prejudice by the court pursuant to a settlement agreement between the parties.  Ohio law holds that a settlement agreement between parties resulting in a dismissal with prejudice operates as *res judicata* to the same extent as an adjudication on the merits.  *See, e.g., Daniel v. Shorebank Cleveland*, 2010-Ohio-1054 (Cuy. Ct. App. 2010).  Further, although the settlement agreement purportedly specified that it did not release any claims pending in the instant case, neither did it waive any defenses Defendants may have had to these claims.

Plaintiffs have not challenged Defendants assertion that this action involves the same parties or their privies or that this action or that these claims could have been litigated in the first action.[7]  However, in order to benefit from the defense of claim preclusion, Defendants must show that the this action arose out of the same transaction or occurrence that was the subject matter of the previous action.  *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).  They have failed to do so.

The fact that both cases arise out of Mr. Jammal's employment relationship with American Family is insufficient to satisfy the nexus requirement for claim preclusion.  *Austin v.*

---

[7] Based on the Court's finding that the claims relating to termination benefits did not arise until after the agents' termination, this element is not satisfied with regard to Mr. Jammal's claims for termination benefits or breach of fiduciary duty based on a failure to pay ERISA compliant termination benefits.

*Club E., Inc*. 2011-Ohio-119 (2011). Yet this is the only nexus between the claims in both cases. The instant case does not arise from an alleged breach of the Agent Agreement's language or intent. In fact, with regard to benefits, the Defendants appear to have followed the contract language exactly. Rather this case arises from Defendants' treatment of Mr. Jammal following the execution of the agreement, which treatment is alleged to have rendered execution of the agreement illegal under ERISA. The claims and relief sought in the two cases do not arise from the same facts and occurrences and are not "logically related" as that term was construed in *Lisboa v. City of Cleveland Heights*, 2014 U.S. App. LEXIS 15321, *5-7 (6th Cir. Aug. 6, 2014). Defendants attempt to prove the required nexus by pointing to Mr. Jammal's deposition testimony in the prior case wherein he expressed that he believed he was not being treated as an independent contractor. Although this testimony may prove that he could have brought this case at that time, this satisfies a different requirement under claim preclusion. It does not, however, prove a nexus between the claims in the two cases at issue. The testimony regarding his frustration with feeling like he was being treated as an employee and not an independent contractor was not necessarily relevant to the specific claims set forth in the prior cases's Complaint. American Family's decision to change rates, underwriting policies, territory assignments, and other such factors whether or not it violated the terms or intent of the Agent Agreements involve decisions they control whether their agent is deemed to be an independent contractor or an employee. They are not based on the same operative facts as they claims centered on how they treated their agents with regard to general independence and control over their own working conditions and their own office management.[8]  Therefore, Defendants'

---

[8] Mr. Jammal stated during discovery that American Family continued to exercise control

motion for Summary Judgment against Mr. Jammal on the basis of *res judicata* is denied.


### Exhaustion of Remedies

Defendants also claim that the Plaintiffs' ERISA claims should be barred they did not exhaust their administrative remedies prior to initiating this lawsuit. "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit. . . ." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). However, where a claimant demonstrates that "pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 588 (2d Cir. 1993); *Pease v. Hartford Life & Accident Insurance Co.*, 449 F.3d 435, 446 (2d Cir. 2006).   Failure to exhaust administrative remedies is an affirmative defense that must be established by the Defendants with the requisite level of proof.  *Pease*, 449 F.3d at 446.

Neither side has provided any case law addressing the issue of whether an "unacknowledged" employee (or wrongfully designated employee) is relieved of the duty to attempt administrative remedies under the futility exception.  However, based on the circumstances of the case, it appears more likely than not that any attempt the Plaintiffs might

---

over "every significant aspect of [his] business" following his graduation from the training program by "retaining approval power of [his] hiring and firing of [his] agency staff, requiring specific office hours and enforcing a dress code, to assigning [him] additional projects for which [he] was paid no additional compensation and mandating meeting attendance and the utilization of American Family sales techniques...."  (ECF #88, ¶ 22).

have made to pursue ERISA benefits through the administrative process would have been futile.

Defendants contended then, and still contend that their agents are independent contractors with

no standing to pursue benefits.  They have argued this position repeatedly to the IRS when

challenged on the issue of tax treatments, and have litigated the issue repeatedly in various

courts.  Further, the termination benefits supplied to the agents have not been treated as an

ERISA plan by the Defendants and, therefore, Defendants would not have addressed them

through ERISA's administrative procedures.  Defendants have provided no evidence or reason to

convince the Court that any attempt by these agents to pursue a claim for benefits under ERISA

administrative procedures would have been anything other than futile.


### Employee Status

Finally, Defendants seek summary judgment on the issue at the heart this matter: whether

the Plaintiffs in this case were employees or independent contractors.   Based on the evidence

presented to the Court thus far in these proceedings, Defendants contend that the agents were all

independent contractors as a matter of law.  Plaintiffs argue that the evidence would allow the

Court to determine that they are employees as a matter of law, or in the alternative that there is at

least a remaining material question of fact on this issue which should be determined at trial.

Courts considering who may be an employee for purposes of ERISA have adopted a

common-law test for distinguishing between and employee and an independent contractor, or

other service provider.  *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992);

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 439 (6th Cir. 2006).   "The determination of

whether a plaintiff qualifies as an employee is a 'mixed question of law and fact' that a judge can

-19-

normally make as a matter of law." *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004).

The parties agree that the common law test for determining who is an employee looks mainly at the degree to which the hiring party retains the right to control the manner and means by which the service is accomplished. *Darden*, 503 U.S. at 323-24. This determination requires an analysis and balancing of the following factors:

> the skill required; the source of instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.*; *Moore*, 458 F.3d at 439 (citing *Violence v. Reid*, 490 U.S. 730, 751-52 (1989)). These factors are not necessarily exclusive, nor is any single factor dispositive. "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden* at 324.

Subsequent to the completion of briefing in this case, the Sixth Circuit issued an opinion in the case of *Keller v. Miri Microsystems*, Case No. 14-1430, decided March 26, 2015, and citing *Rutherford Food Corp. v. v. McComb*, 331 U.S. 722, 729 (1947), in which it re-focused the ultimate inquiry under *Darden* on "whether a worker, even when labeled as an "independent contractor," is, as a matter of "economic reality," an employee. According to the Sixth Circuit this would occur whenever a worker is "as a matter of economic reality...dependent upon the business to which they render service. *Keller* at pg. 5 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)). Although acknowledging that no one factor is determinative under *Darden*, the *Keller* court held that "[a] central question is the worker's economic dependence

-20-

upon the business for which he is laboring." *Keller* at pg. 5 (quoting *Brandel*, 736 F.2d at 1120).

It is undisputed that Plaintiffs in this case were hired as independent contractors, as evidenced by the Agent Agreement. However, the fact that Defendants designated the agents as independent contractors, whether or not they agreed to that designation is not dispositive of the issue. *See, Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996)(signing an independent contractor agreement does not equate to a waiver of employee rights under ERISA). It is also undisputed that the agents were paid primarily by commission and they were treated as independent contractors for tax treatment and benefits purposes. These facts, however, advance the issue no further that the original designation does. They shed little light on ultimate question of whether Defendants retained the right, in practice, to control the manner and means of the agents' work or whether as a matter of "economic reality" the agents "as a matter or economic reality are dependent upon" the Defendants' business. *Keller* at pg. 5 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)).

Defendants cite to other cases wherein courts have found that American Family agents were independent contractors. Plaintiffs cite a case in which a court found the agent in question to be an employee. None of these cases have the same combination of factors, based on the undisputed evidence, as exist in the instant case. Several of the factors cited as similar by Defendants are conditions presumed by the contractual designation of independent contractor status, but do not look at the actual working relationship between the parties. Several other factors that Defendants claim put them in the category of cases finding independent contractor status, such as "company did not have right to supervise day-to-day activities," and agents had

control over their own hiring and advertising, are contradicted by the evidence Plaintiffs have

presented.   Further, the comparison charts submitted by Defendants do not address all of the

factors and circumstances relevant to the determination of employee status.

Defendants also point to the undisputed fact that the agents generally made significant

capital investments in their business.  Courts have made it clear, however, that the investment of

the worker must be construed in comparison to the employer's investment in the overall

operation.  *Keller* at pg. 10, (citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442

(10th Cir. 1998)).  This muddies the issue significantly.  Further, the Sixth Circuit reminds us in

*Keller* that capital investment must also still be considered in the context of whether it provides

evidence of economic independence.   If all of the agents' investments were worthless as

professional investments upon termination of their relationship with Defendants, their capital

infusion may not provide much if any evidence to support an independent contractor designation.

*Keller* at 11.

Plaintiffs have submitted evidence that would suggest that Defendants were the source of

many of the instrumentalities and tools necessary to the job (i.e., computer equipment and

software); Defendants had veto power over choice over the agent's hiring choices; the

Defendants had the right to assign unpaid accounts to the agents; Defendants retained and

exercised the right to require specific office hours and a minimum amount of hours spent

working; and Defendants otherwise control the manner and means of the agents' work.  Further,

Plaintiffs submitted at least some evidence that Defendants assigned their geographic sales

territories and unilaterally set the rate and underwriting schedules, as well as dictated which

products the agents could and must sell.  The *Keller* court found that similar restraints on the

agents independence in obtaining new customers could be found to weigh in favor of employee status. *Keller* at 12-13.

Further, other factors set forth in Darden, but not discussed by Defendants, could weigh in favor of employee status. For example, there is no dispute that the agents were required to have an exclusive relationship with Defendants and could not sell other insurance policy brands, even if they were non-competing policies. Further, the agents tended to work for Defendants long term for a continuous and indefinite term, and with evidence of some variations Plaintiffs appeared to work exclusively for the Defendants. These factors tend to weigh in favor of employee status. *See, Keller* at pg. 6-7, (*citing Baker* 137 F.3d at 1442). In addition, the work of selling insurance is without a doubt not only a part, but possibly the most important part of the regular business of an company who offers insurance. "The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller* at pg. 17, (citing *Keeton v. Time Warner Cable, Inc.*, No. 2:09-CV-1085, 2011 WL 2618926, at *4 (S.D. Ohio July 1, 2011)).

Because there are some undisputed *Darden* factors weighing in favor of each classification, the disputed facts surrounding the issue of what amount of control Defendants exercised or had the right to exercise of the manner and means of the agents' work will be critical to a final determination. Based on the evidence available at this stage of the litigation, and taking the facts in the light most favorable to the Plaintiffs as the non-moving parties, the Court cannot say as a matter of law that they were not employees for purposes of ERISA. There remains a question of material fact as to the amount of control Defendants had the right to exert, or, in fact, did exert over the agents, as well as the degree to which the Plaintiffs were

-23-

economically dependent upon the Defendants' business.  The determination of disputed facts relevant to the ultimate question and the appropriate weight to give to each factor can be more properly determined at trial.  Therefore, summary judgment is not appropriate on this issue.

### Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment as to All Claims Asserted by Plaintiff Kathleen Tuersley's Claims (ECF #77) is GRANTED IN PART and DENIED IN PART.  Ms. Tuersley is barred from pursuing her claim for breach of fiduciary duty under Count Four by the statute of limitations.  All other claims brought on her behalf will proceed to trial.  Defendants' Motions for Summary Judgment as to the claims for all remaining named Plaintiffs (ECF # 70, 75, 79) are DENIED.   Plaintiffs' Motion on the Statute of Limitations is also DENIED.  (ECF #82).  A Status is set for May 7, 2015 at 10:30 a.m.. IT IS SO ORDERED.

 /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:   April 20, 2015

-24-